# In the United States Court of Federal Claims

No. 22-366C

(E-Filed: May 23, 2022)[1]

|  |  |  |
|---|---|---|
| C&E SERVICES, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Competition in Contracting Act; 31 U.S.C. § 3553; Stay of |
| THE UNITED STATES, | ) ) | Performance; Preliminary Injunction; Bid Protest. |
| Defendant, | ) ) | |
| and | ) ) | |
| KADIAK, LLC, | ) ) | |
| Intervenor-defendant. | ) ) | |

Kevin P. Connelly, Washington, DC, for plaintiff.  Kelly E. Buroker and Tamara Droubi, of counsel.

Vincent D. Phillips, Jr., Senior Trial Counsel, with whom were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Katherine A. Allen and Rachel McGuane, United States Department of the Treasury, Bureau of Engraving and Printing, of counsel.

---

[1]  This opinion was filed under seal on April 28, 2022.  See ECF No. 37.  The parties were invited to identify source selection, propriety, or confidential material subject to deletion on the basis that the matter is protectived or privileged.  No redactions were proposed by the parties.  See ECF No. 40 (joint status report).  Thus, the sealed and the public versions of this opinion are identical, except for the publication date and this footnote.

Devon E. Hewitt, Tysons Corner, VA, for intervenor-defendant.[2]

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

This bid protest involves a challenge to the decision by the United States Department of the Treasury, Bureau of Engraving and Printing (BEP or the agency) to override an automatic stay pursuant to the Competition in Contracting Act (CICA), 31 U.S.C. § 3553(d)(3)(C)(i). See ECF No. 34 at 2 (corrected first amended complaint).

Presently before the court is plaintiff's motion for a preliminary injunction, which plaintiff filed on April 11, 2022.[3] See ECF No. 31. Defendant filed a response to the motion on April 13, 2022, see ECF No. 35, and plaintiff filed a reply in support of the motion on April 19, 2022, see ECF No. 36.

The motion is now fully briefed and ripe for decision. The parties did not request oral argument, and the court deems such argument unnecessary. The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, the motion for a preliminary injunction is **DENIED**.

I.   Background

Plaintiff "is in the business of providing wastewater treatment and pretreatment to government and commercial customers." ECF No. 34 at 1. The BEP has contracted with plaintiff for approximately twenty-four years. See id. at 5.

On March 23, 2022, plaintiff filed a protest action before the Government Accountability Office (GAO), challenging the agency's decision to award Contract No. 2031ZA22C00005 to intervenor-defendant. See ECF No. 34 at 2, 3. Plaintiff's GAO filing triggered an automatic CICA stay of performance under the contract. See id. at 4.

---

[2]   Intervenor-defendant did not file any documents relevant to the motion presently before the court, but the court includes its counsel for completeness.

[3]   On April 1, 2022, the court set a schedule to govern the filing and briefing of plaintiff's motion for preliminary injunction. See ECF No. 23 at 2. Plaintiff timely filed its motion, which it titled "Plaintiff's Motion for a Preliminary Injunction." ECF No. 31. The memorandum attached to plaintiff's motion, however, purports to seek declaratory, preliminary, and permanent injunctive relief. See ECF No. 31-1 at 1, 30. The court will confine its analysis in the present decision to the propriety of preliminary injunctive relief, as that is the only motion that has been scheduled by the court. The court will consider an award of declaratory and permanent injunctive relief at the procedurally appropriate time.

On March 29, 2022, the agency notified plaintiff that it intended to override the CICA stay and allow performance to proceed.  See id.

On March 31, 2022, plaintiff filed the instant protest challenging the agency's decision to override the CICA stay.  See ECF No. 1 (complaint).  At the time that the plaintiff filed its initial complaint, it had not yet received any documentation related to the override decision.  See id. at 8.

The court convened an initial status conference with the parties on March 31, 2022.  See ECF No. 10 (order memorializing the status conference).  During the conference, counsel for defendant transmitted to all participants, by email, a copy of the contracting authority's documented justification for the override decision dated March 28, 2022.  See id. at 2.  The document is concise, and consists, in its entirety, of the following:

> In accordance with FAR 33.104(c)(2), as the Head of Contracting Authority (HCA) for the Department of the Treasury, Bureau of Engraving and Printing (BEP), I find that it is in the best interest of the United States for Kadiak, LLC[] to continue performance on Contract No. 2031ZA22C00005 to ensure sufficient contractor staffing and environmentally safe operation of BEP's Wastewater and Storm Water Program, pending the final decision by the Government Accountability Office (GAO).
>
> BEP awarded Contract No. 2031ZA22C00005 to Kadiak, LLC, an 8(a) Alaskan Native Company, effective November 1, 2021.  The contract is valued at $17,826,641.98, including base and all options.  Kadiak, LLC is providing essential services to BEP, including managing, operating, maintaining supplies, performing maintenance, and providing technical support for BEP's Wastewater and Storm Water Program at the District of Columbia Currency Facility, in Washington, DC.
>
> Sufficient contractor staffing and environmentally safe operation of the BEP's Wastewater and Storm Water Program is critical to accomplishing BEP's mission of manufacturing the nation's currency and to its ability to produce Federal Reserve notes to meet the increased volume of the Yearly Currency Order.  Any interruption to BEP's Wastewater and Storm Water Program would negatively impact BEP's ability to manufacture and produce the Federal Reserve notes in a timely and environmentally safe manner and may potentially endanger the United States' currency supply to the Federal Reserve System.

See ECF No. 34-1 at 2.

Plaintiff alleges that it "has performed this contract work at BEP for 24 years without ever impacting BEP's ability to manufacture and produce the Federal Reserve notes in a timely and environmentally safe manner." ECF No. 34 at 5. In support of this assertion, plaintiff references the April 7, 2022 declaration of Carl Biggs, plaintiff's president, owner, and general manager. See id. (citing ECF No. 34-2 at 4). Plaintiff also disagrees with the agency's assessment that intervenor-defendant was prepared to perform under the contract at the time of the override decision. See id.

Plaintiff further alleges that, after this protest action was initiated, the agency extended the contract under which plaintiff is presently performing through April 2022, rather than allow intervenor-defendant to assume performance on April 1, 2022. See id. According to plaintiff, the agency chose to extend the present contract because intervenor-defendant "did not have the necessary personnel" to begin performance because "the only individuals performing the necessary BEP work" are plaintiff's employees. Id. (citing ECF No. 34-2 at 5-6).

In response to plaintiff's motion, defendant produced the declaration of Patricia M. Greiner, the Deputy Director and Chief Administrative Officer and Head of Contracting Authority for the agency. See ECF No. 35-1 at 1-5. Ms. Greiner refers to a second declaration, from Myron Hodge, an Environmental Specialist with the agency, for documentation of the concerns that led to her decision to override the CICA stay at issue in this case. See id. at 4.

Mr. Hodge states that plaintiff "has been operating with a less than full staff on this contract for the entire period of performance," which has "compromised" plaintiff's ability to meet its obligations. ECF No. 35-2 at 3. Mr. Hodge further represents that plaintiff's inadequate staffing created a risk to environmental and personal safety. See id. at 4. Mr. Hodge then explains a series of performance failures on plaintiff's part, and attaches a number of exhibits as proof of the same. See id. at 4-250.

In reply, plaintiff offers a second declaration from Mr. Biggs, dated April 19, 2022, in which Mr. Biggs counters Mr. Hodge's contentions that plaintiff was under-staffed and under-performing. See ECF No. 36-1. Mr. Biggs also explains the irreparable harm—lost personnel, lost opportunities to compete, and lost revenue—that plaintiff alleges it will suffer absent the requested injunctive relief. See id. at 6-7.

II.     Legal Standards

In its corrected first amended complaint, plaintiff invokes this court's bid protest jurisdiction. See ECF No. 34 at 7. This court's bid protest jurisdiction is based on the Tucker Act, which gives the court authority:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).  The Tucker Act also states that the court may grant "any relief that the court considers proper, including . . . injunctive relief."  28 U.S.C. § 1491(b)(2).

To establish jurisdiction, a plaintiff must demonstrate that it is an "interested party."  28 U.S.C. § 1491(b)(1).  The United States Court of Appeals for the Federal Circuit has held that the "interested party" requirement "imposes more stringent standing requirements than Article III."  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009).  Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest.'"  See id. (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006)) (alteration in original).  Although "standing is not often discussed at length in CICA stay override cases," the court makes the same inquiry into actual or prospective bidder status and direct economic interest in such circumstances.  PMTech, Inc. v. United States, 95 Fed. Cl. 330, 348 (2010).

Once jurisdiction is established, the court's analysis of a "bid protest proceeds in two steps."  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  First, the court determines, pursuant to the Administrative Procedure Act standard of review, 5 U.S.C. § 706, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law."  Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)).  If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial.  See Bannum, 404 F.3d at 1351.

To establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'"  Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).  "In other words, the protestor's chance of securing the award must not have been insubstantial."  Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citations omitted).  The substantial chance requirement does not mean that plaintiff must prove it was next in line for the award but for the government's errors.  See Sci. & Mgmt. Res., Inc. v. United States, 117 Fed. Cl. 54, 62 (2014); see also Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not

5

required to show that but for the alleged error, the protester would have been awarded the contract."). But plaintiff must, at minimum, show that "had the alleged errors been cured, . . . 'its chances of securing the contract [would have] increased.'" Precision Asset Mgmt. Corp. v. United States, 125 Fed. Cl. 228, 233 (2016) (quoting Info. Tech., 316 F.3d at 1319).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As the Supreme Court of the United States has explained, the scope of review under the "arbitrary and capricious" standard is narrow. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974). "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,'" and "'[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, 575 F.3d at 1368-69 (stating that under a highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

      B.      Preliminary Injunctive Relief

The Federal Circuit has held:

> To obtain the extraordinary relief of an injunction prior to trial, the movant carries the burden to establish a right thereto in light of the following factors: 1) that the movant is likely to succeed on the merits at trial; 2) that it will suffer irreparable harm if preliminary relief is not granted; 3) that the balance of the hardships tips in the movant's favor; and 4) that a preliminary injunction will not be contrary to the public interest.

FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted). When considering these factors, "the weakness of the showing regarding one factor may be overborne by the strength of the others," while "the absence of an adequate showing with regard to any one factor may be sufficient . . . to justify the denial" of the preliminary injunction. Id. (citations omitted). The Circuit also notes, however that "[a]bsent a showing that a movant is likely to succeed on the merits," it is unclear "whether the movant can ever be entitled to a preliminary injunction unless some extraordinary injury or strong public interest is also shown."[4] Id.

---

[4] The United States Court of Appeals for the Federal Circuit has held that a failure to show likelihood of success on the merits is dispositive. See, e.g., Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (stating that "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits") (citation and footnote omitted); Amazon.com, Inc. v. Barnsandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed.

III.   Analysis

   A.   Likelihood of Success on the Merits

In this case, plaintiff challenges the agency's decision to override a CICA stay, and has standing to do so as the incumbent contractor performing the work at issue in the procurement that was stayed by plaintiff's GAO protest. See ECF No. 34 at 11; PMTech,, 95 Fed. Cl. at 348. The CICA states, in relevant part, as follows:

   (A)   If the Federal agency awarding the contract receives notice of a protest in accordance with this section during the period described in paragraph (4)—

      (i)   the contracting officer may not authorize performance of the contract to begin while the protest is pending; or

      (ii)   if authorization for contract performance to proceed was not withheld . . . before receipt of the notice, the contracting officer shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract.

   (B)   Performance and related activities suspended pursuant to subparagraph (A)(ii) by reason of a protest may not be resumed while the protest is pending.

---

Cir. 2001) (stating that "a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm"). These cases and others like them issued by the Federal Circuit are patent cases. The court found only one instance outside the patent context in which the Federal Circuit affirmed a decision that cites to patent cases to support the proposition that a movant must establish both a likelihood of success on the merits and irreparable harm in order to obtain a preliminary injunction. See Treadwell Corp. v. United States, 133 Fed. Cl. 371, 380 (2017), aff'd, 726 F. App'x 826 (Fed. Cir. 2018) ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction.") (citation omitted). Because the Circuit's decision in Treadwell was issued without any substantive analysis, it is not clear to the court whether the Circuit intends the rule it has applied in patent cases, which involve a statutory basis for injunctive relief, see 35 U.S.C. § 283, to apply more broadly. See Treadwell, 726 F. App'x 826. The court need not resolve the issue here, however, because the outcome in this case is not dependent on this fine point of law.

> (C) The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—
>
> > (i) upon a written finding that—
> >
> > > (I) performance of the contract is in the best interests of the United States; or
> > >
> > > (II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and
> >
> > (ii) after the Comptroller General is notified of that finding.

31 U.S.C. § 3553(d)(3).

In order to successfully challenge an agency's decision to override a CICA stay, a plaintiff must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705, 709 (2006) (citing 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A)). An agency decision is arbitrary or capricious when:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009).

In Reilly's Wholesale, 73 Fed. Cl. 705, this court developed what plaintiff characterizes as a "template for evaluating an override determination." ECF No. 31-1 at 20. The Federal Circuit has recently clarified, however, "that the Reilly's factors do not even bind the Claims Court, let alone comprise an indispensable aspect of agency rational basis." Safeguard Base Operations, LLC v. United States, 792 Fed. App'x 945, 948-49 (Fed. Cir. 2019) (internal citations omitted). Accordingly, the court will evaluate this case under the test articulated by the Supreme Court, and consider whether the agency has: (1) relied on factors Congress did not intend for the agency to consider; (2) failed to consider an important aspect of the problem; (3) offered an explanation for the override

decision that is contrary to the evidence; or (4) offered an explanation that is implausible. See Motor Vehicle Mfrs., 463 U.S. at 43.

In this case, a stay of contract performance was triggered pursuant to 31 U.S.C. § 3553(d)(3)(a) when plaintiff filed its currently-pending protest before the GAO on March 23, 2022. See ECF No. 34 at 3-4. The agency then decided to override the stay on March 28, 2022, when it determined that "it is in the best interest of the United States for Kadiak, LLC[] to continue performance on Contract No. 2031ZA22C00005 to ensure sufficient contractor staffing and environmentally safe operation of BEP's Wastewater and Storm Water Program, pending the final decision by the Government Accountability Office (GAO)." ECF No. 34-1 at 2.

Plaintiff alleges that the agency's "best interests" override decision is unsupportable for, essentially, two reasons: (1) plaintiff had successfully performed the contract for approximately twenty-four years; and (2) the agency knew or should have known that staffing problems would prevent intervenor-defendant from beginning performance on April 1, 2022. See ECF No. 34 at 5; ECF No. 31-1 at 16.

According to plaintiff, its successful performance record indicates both that the CICA stay would not result in adverse consequences for the agency and that its continued performance was a reasonable alternative to the override. See ECF No. 31-1 at 22-24. Plaintiff also asserts that the agency's decision to extend plaintiff's bridge contract through April supports both its argument that plaintiff was successfully performing, and its claim that intervenor-defendant "was not physically able or ready to start contract performance." Id. at 23.

In response, defendant focuses the court's attention on the agency's identification of staffing and environmentally safe practices as areas of concern. See ECF No. 35 at 17-18. Defendant argues that the agency sufficiently explained the critical nature of the staffing and environmental concerns, both of which are supported by Mr. Hodge's declaration outlining various of plaintiff's failures on both issues. See e.g., ECF No. 35-2 at 3-4 (noting that plaintiff "has been operating with a less than full staff on this contract for the entire period of performance," which has resulted in "management requirements being unmet," and the need for the agency to "perform some of the contracted services"); id. at 4 (stating that inadequate staffing "creates an additional risk to BEP in the case of a chemical spill"); id. at 4-10 (detailing technical and maintenance issues with important instruments); id. at 10 (stating that the agency directed plaintiff to "stop using the instrument to prevent further damage to the instrument and waste chemicals"); id. at 10-11 (explaining that "[i]f the intaglio printing process is flawed, the currency that is ultimately produced is also flawed and cannot be used"). Defendant concludes that "these substantial risks would not be mitigated if BEP were to maintain the status quo," and therefore, "BEP rationally concluded that it was in the best interest of the United States to override the automatic CICA stay." ECF No. 35 at 19.

In the court's view, the present record does not support a finding that plaintiff is likely to succeed on the merits of its case. Plaintiff does not appear to contend that the agency relied on improper considerations or failed to consider important factors in deciding to override the CICA stay. See Motor Vehicle Mfrs., 463 U.S. at 43. Rather, plaintiff seems to suggest that the agency's explanation for the override decision is either contrary to the evidence or implausible. See id.; ECF No. 31-1 at 22-24. More specifically, plaintiff strongly disagrees with defendant's characterization of its performance as deficient. See ECF No. 31-1 at 22. Plaintiff argues that it "has been able to complete all work and all tasks" despite a loss of personnel, id., and cites to Mr. Biggs' declaration as support, id. (citing ECF No. 31-3 at 3). To the extent that a disagreement exists with regard to whether plaintiff has properly maintained certain instruments, plaintiff indicates that the agency is the source of any problems. See id. at 22-23 n.9; ECF No. 31-3 at 4; ECF No. 36 at 16.

The evidence offered by defendant in response effectively calls into question plaintiff's assertions. Mr. Hodge's declaration and the voluminous attachments thereto provide significant detail in support of defendant's position that the agency had well-founded concerns about plaintiff's performance. See ECF No. 35-2. The court, though, does not have before it the complete administrative record. That complete record may include documents to provide context for the parties' divergent views that is not readily apparent from the documents before the court at this time.

Furthermore, plaintiff's argument that the agency should have known that intervenor-defendant was not ready to assume contract responsibilities focuses on events that post-date the override decision. See ECF No. 31-1 at 21 (plaintiff arguing that defendant's March 31, 2022 decision to extend plaintiff's bridge contract through April 2022 demonstrates that intervenor-defendant was unprepared to perform); ECF No. 36 at 15-16 (same). For this reason, the court cannot properly consider it when evaluating the rationality of the override decision based on the information considered by the agency at the time the decision was made.

As such, the court cannot yet predict which party is likely to prevail, and the court finds that plaintiff has not shown that this factor weighs in its favor. See FMC Corp., 3 F.3d at 427.

      B.    Irreparable Harm

Plaintiff first argues that if the court does not grant a preliminary injunction against the agency's decision to override the CICA stay, it will suffer irreparable harm:

> because, if [plaintiff] were to prevail at the GAO in early July 2022 . . ., [plaintiff] will have been deprived of the opportunity to compete in the fair

competitive bidding process that would have occurred but for BEP's improper movement of the contract into the 8(a) program, which was premised on the SBA's arbitrary and capricious adverse impact analysis and related conclusions.

ECF No. 31-1 at 27. "In addition," plaintiff continues, intervenor-defendant "intends to hire nearly all of [plaintiff's] employees and supervisors working on the contract," and "the loss of the majority of the workforce will irreparably harm [plaintiff] in the future competition for the long-term contract." Id. Defendant contends that any harm plaintiff may suffer "amounts to nothing more than a potential economic loss." ECF No. 35 at 26.

While it is true that plaintiff may suffer an economic loss absent the CICA stay, and that this court has held that "economic loss alone does not constitute irreparable harm," the harm plaintiff has alleged it will suffer is more than simply economic. Chapman Law Firm Co. v. United States, 67 Fed. Cl. 188, 193 (2005). This court has also held that "the failure of an agency to stay performance could result in a competitive disadvantage that might not be remedied, causing a contractor to lose an important business opportunity." Reilly's Wholesale, 73 Fed. Cl. at 717 (citations omitted).

Here, plaintiff argues that intervenor-defendant intends to hire plaintiff's employees to perform the contract work, which would place plaintiff at a material competitive disadvantage if the GAO sustains its protest and it has the opportunity to compete for the contract. See ECF No. 31-1 at 27. It is reasonable to conclude that the loss of qualified, experienced personnel would put plaintiff in a relatively weaker position with regard to a potential future competition. That said, if the workforce is likely to follow the work rather than the employer in these circumstances, it also stands to reason that the agency would understand the flow of employees and consider that pattern in weighing the importance of presently employed personnel. As such, this factor weighs in plaintiff's favor, but not heavily.

    C.    Balance of Hardships

The court next considers the balance of hardships that may suffered by the parties. FMC Corp., 3 F.3d at 427. "Under this factor, the court must consider whether the balance of hardships leans in the plaintiff's favor." Reilly's Wholesale, 73 Fed. Cl. at 715. This inquiry also requires the court to consider "the harm to the government and to the intervening defendant." Id. Here, plaintiff identifies its hardship as the lost opportunity to fairly compete—the same harm identified in considering whether plaintiff will suffer irreparable harm absent a CICA stay. See ECF No. 31-1 at 28-29; ECF No. 36 at 22. Defendant contends that the court should disregard plaintiff's argument due to this repetition, but offers no further, substantive argument. See ECF No. 35 at 27. Neither party addressed any hardship that might be borne by intervenor-defendant.

As noted above, while it is certainly reasonable to view the loss of qualified employees as a real potential harm to plaintiff, it does not appear to be a particularly grave or extraordinary one in these circumstances.  On the other hand, if the court requires defendant to continue allowing plaintiff to perform under the contract, it will not be permitted to take the steps it considers necessary to remedy plaintiff's allegedly deficient performance.  In the most generous view of the facts for plaintiff's case, these hardships are in equipoise, but do not "lean[] in the plaintiff's favor."  Reilly's Wholesale, 73 Fed. Cl. at 715.

### D. Public Interest

Finally, the court must consider whether injunctive relief serves the public interest.  FMC Corp., 3 F.3d at 427.  Plaintiff defines the public interest at issue as "preserving the integrity of the competitive process," as well as the "long-term interest in ensuring that the new contract represents the best overall value to the government."  ECF No. 31-1 at 29.  Plaintiff argues that "requiring the agency to implement the stay provides the best opportunity to achieve that goal."  Id.  Defendant, in response, insists that "the public's interests in BEP staying compliant with environmental standards or maintaining the required manufacturing capability necessary to ensure that BEP can meet the United States' currency printing obligations" must also be considered in evaluating this factor.  See ECF No. 35 at 27.

The public certainly has an interest in the integrity of the competitive process, but plaintiff has failed to adequately explain why allowing the agency to follow the procedures provided by CICA to override the otherwise mandatory stay would result in a loss of integrity in the procurement system.  Plaintiff's assertion that "reinstituting the stay will not impair the [a]gency's ability to obtain the services," is not enough in this case.  See ECF No. 31-1 at 29.  As the court has previously noted, the agency's concerns about plaintiff's performance appear to have at least some basis in fact.  See ECF No. 35-2 (Hodge declaration explaining and attaching documentation of a series of performance failures on plaintiff's part).  As such, the court finds that injunctive relief does not clearly serve the public interest in this case.  FMC Corp., 3 F.3d at 427.

Having reviewed the relevant factors, the court finds that plaintiff has shown, by a slight margin, that it may suffer irreparable harm absent the requested injunction.  None of the remaining three factors, however—including and most importantly, the likelihood of success on the merits—militates in favor of the court's intervention here.  Therefore, plaintiff has not demonstrated that it is entitled to preliminary injunctive relief.

IV.     Conclusion

Accordingly:

(1)     Plaintiff's motion for a preliminary injunction, ECF No. 31, is **DENIED**;

(2)     On or before **May 13, 2022**, the parties are directed to **CONFER** and **FILE** a **joint status report** informing the court as to how the parties wish to proceed in this case and proposing a schedule for doing so; and

(3)     On or before **May 20, 2022**, the parties are directed to **CONFER** and **FILE** a **notice** attaching the parties' agreed upon redacted version of this opinion and order, with all competition-sensitive information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge
